**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3: 11cv7**

| | |
|---|---|
| **MEDICAL SPECIALTIES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| Vs. ) | MEMORANDUM |
| ) | OF DECISION |
| **C. STEVEN YATES,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss (#7). Having considered defendant's motion and reviewed the pleadings, the court enters the following findings, conclusions, and Order granting the Motion to Dismiss.

## FINDINGS AND CONCLUSIONS

**I.    Nature of the Action**

This action concerns, as does <u>Yates v. Medical Specialties, Inc.</u>, 3:11cv6 (W.D.N.C. 2011), whether Medical Specialities, Inc. (hereinafter "MSI") is in breach of a settlement agreement it reached with C. Steven Yates (hereinafter "Yates") in 1996 concerning what Yates (and apparently the settlement agreement) call "development fees" and MSI calls "royalties" based on MSI's sales of "ankle stabilizing orthotic" (hereinafter "ASO") appliances. (The court will simply refer to such payments as "fees" for the sake of convenience.)

At issue in this action is MSI's purported refusal since April 2010 to make payments to plaintiff of 37.5 cents per "covered device" sold by MSI. According to Yates, the term "covered devices" includes devices specified in the 1996 settlement agreement and, as specified in the agreement, any other device MSI thereinafter added to its product line that

-1-

fell within the scope of utility Patent No. 5,067,486 (hereinafter " the '486 patent").

Some history is necessary to provide context. It appears undisputed that despite earning fees from the sales of such devices, Yates is not the inventor of the technology behind such devices. MSI appears to own the technology. Instead, it appears that Yates is the former head athletic trainer at Wake Forest University, who is experienced in taping ankles and has specialized knowledge of the anatomical purposes achievable through proper taping. In 1989, a former officer of MSI contacted Yates and secured his assistance in the development, evaluation, commercialization, and promotion of the ASO appliance. MSI apparently agreed to pay Yates a percentage of net sales of all ASO devices in exchange for his assistance for the "product life cycle."

This relationship appears to have been going well up until 1994, and it is undisputed that MSI paid Yates all fees up to that point. In 1995, however, things changed. According to Yates's Complaint, in 1995 MSI developed and marketed a retail version of the ASO at his suggestion. Rather than compensate Yates for the professional and retail versions of the ASO, MSI apparently refused to compensate Yates for *either* version. Yates filed suit against MSI in the North Carolina General Court of Justice, <u>Yates v. Medical Specialties, Inc.</u>, 95 CVS 2773 (Forsyth Co. Sup. Ct. 1995), leading, ultimately, to the settlement agreement now at issue in this matter and in the companion case.

In the years following the settlement agreement, MSI apparently continued to enjoy robust sales of its ASO devices and even expanded the product line of ASO devices to include four additional devices. Yates claims that these devices also "used the '486 patent" as contemplated by the 1996 settlement agreement.

In 2010, MSI was issued an additional patent for an improvement to the invention claimed by the '486 patent, denominated *Ankle Stabilizing Apparatus Having A Pivotable*

*Stiffening Unit*. On or about the date that patent issued, Yates claims that MSI began manufacturing and marketing an embodiment of the invention claimed by the new patent as the "ASO Flex-Hinge." At about the same time, MSI stopped paying his fees despite continuing to sell at least six covered devices, according to Yates.

As he did in 1995, Yates filed suit in 2010 in the North Carolina General Court of Justice, <u>Yates v. Medical Specialties, Inc.</u>, 10CVS 24536 (Mecklenburg Co. Sup. Ct. 2010), this time seeking to recover for breach of the 1996 settlement agreement. After Yates sought and received assignment of such action to the North Carolina Business Court by Order of Honorable Sarah Parker, Chief Justice of the North Carolina Supreme Court, MSI removed the companion action to this court in accordance with 28, United States Code, Section 1338(a).

As is clear from the removal papers filed with this court, the removal was based on MSI's belief that at least one of Yates's state law breach of contract claims relate to the '486 patent. Within minutes of removing Yates's state-court action to this court, MSI filed this mirror-image declaratory judgment action under 28, United States Code, Section 2201(a). As shown in a Memorandum of Decision filed simultaneously herewith, the court has determined that subject-matter jurisdiction exists in the companion action and that consolidation of this action with the companion action is neither necessary nor of legal consequence.

## II. Discussion

The filing of a declaratory judgment action under 28, United States Code, Sections 2201-2202, does not in and of itself confer jurisdiction. <u>Schilling v. Rogers</u>, 363 U.S. 666, 667 (1960); <u>Delavigne v. Delavigne</u>, 530 F.2d 598, 601 (4th Cir.1976). Instead, a district court may entertain a declaratory judgment action before it where the claim

amounts to a "case of actual controversy" within the court's diversity jurisdiction. Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir.1994), overruled on other grounds, Wilton v. Seven Falls Co., 515 U.S. 277 (1995). The Court of Appeals for the Fourth Circuit has held that a

> declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." It should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." The Supreme Court explained that, when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding...."
>     Guided by these general principles--as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts"-- the Fourth Circuit has set forth a number of specific factors for district courts to consider. These include: (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural fencing"--that is, "to provide another forum in a race for *res judicata*" or "to achiev[e] a federal hearing in a case otherwise not removable."

Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256-57 (4th Cir. 1996)(citations omitted). In Wilton, supra, the United States Supreme Court reaffirmed Brillhart v. Excess Ins. Co., 316 U.S. 491(1942), where the district court dismissed the action

-4-

because of ongoing state litigation. According to the Wilton Court, the proposition in Brillhart that was reaffirmed was

> where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed.

Wilton, supra, at 283 (citation omitted). The Wilton Court concluded that the district courts possess wide discretion in making these decisions holding as follows:

> [c]onsistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

Id., at 288. The appellate court recognized that to whatever extent its decisions implied further restrictions on district court discretion in determining whether to exercise jurisdiction over Declaratory Judgment Act cases, such decisions must yield to the clear decision of the Supreme Court in Wilton. Centennial, supra, at 257-258.

## III. Discussion

Under the Declaratory Judgment Act, federal courts exercise discretion in determining whether to allow such actions to proceed even though the suit otherwise satisfies the requirements of federal subject matter jurisdiction. Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). Aetna Casualty and Surety v. Alpha Mechanical, Inc., 9 F.Supp.2d 585, 587 (W.D.N.C. 1998). "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial…." Wilton, supra, at 288. When deciding whether to allow the continuation of a federal action which parallels a state court proceeding, courts consider "whether the controversy can better be settled in the proceeding pending in the state court." Centennial Life Insurance Company v. Poston, 88 F.3d 255, 256 (4th Cir. 1996). In this case, the state-court

proceeding is now before this court.

The overriding concern is whether "the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding…." <u>Wilton</u>, supra, at 283. The Supreme Court has specifically cautioned and reaffirmed that where there is

> another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed.

<u>Id.</u> (citation omitted). As is shown in the Order entered in the companions matter, all issues are properly before the court in that action. Further, if the court were to allow this action to proceed, and a reviewing court were to later determine that subject-matter jurisdiction did not exist, the continuation of this action would clearly run afoul of the *Nautilus* factors:

(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;

(iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" ; and

(iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing"--that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

<u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d at 257. As is clear from MSI's pleadings in both actions, allowing the continuance of this action would clearly be contrary to the third and fourth *Nautilus* factors. The court will, therefore, dismiss this action.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss (#7) is **ALLOWED** and this action is **DISMISSED** without prejudice as to plaintiff asserting the claims presented in this action as compulsory counterclaims in the companion action, <u>Yates v. Medical Specialties, Inc.</u>, 3:11cv6 (W.D.N.C. 2011), if such has not already been accomplished.

Signed: June 6, 2011

Max O. Cogburn Jr.
United States District Judge